NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 251366-U

NO. 4-25-1366

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 27, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* T.H., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Sangamon County |
|     Petitioner-Appellee, | ) | No. 23JA1 |
|     v. | ) | |
| Tyland H., | ) | Honorable |
|     Respondent-Appellant). | ) | Sierra Senor-Moore, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Grischow and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding the trial court's unfitness finding was not
against the manifest weight of the evidence.

¶ 2    In September 2025, the State filed a supplemental motion for termination of
parental rights against respondent, Tyland H., the father of T.H. (born in March 2019). In
December 2025, the trial court granted the motion. Tyland appealed, arguing the court's
unfitness finding was against the manifest weight of the evidence. We affirm.

¶ 3                 I. BACKGROUND

¶ 4    On January 4, 2023, the trial court found probable cause existed that T.H. was a
neglected and abused minor whose environment was injurious to his welfare because he was
"physically abused while in the care of his mother," which was "evidenced by the bruises to the
minor's face and forearms, as well as the swelling caused to his ears." See 705 ILCS 405/2-3(1),

(2) (West 2022). T.H.'s mother surrendered her parental rights and is not a part of this appeal.

¶ 5      On March 29, 2023, the trial court entered an adjudicatory order finding T.H. neglected. On May 10, 2023, the court entered a dispositional order making T.H. a ward of the court, placing his custody and guardianship with the Illinois Department of Children and Family Services (DCFS), and finding Tyland unfit, unable, or unwilling to care for him.

¶ 6      On May 15, 2024, the State filed a petition to terminate Tyland's parental rights, alleging he was unfit because (1) he failed to maintain a reasonable degree of interest, concern, or responsibility regarding T.H.'s welfare, (2) he was depraved, (3) he failed to make reasonable efforts to correct the conditions causing T.H.'s removal during the nine-month periods from March 29, 2023, to December 29, 2023, and August 15, 2023, to May 15, 2024, and (4) he failed to make reasonable progress toward T.H.'s return to his care during the same nine-month periods. See 750 ILCS 50/1(D)(b), (i), (m)(i)-(ii) (West 2024). On September 10, 2025, the State filed a supplemental motion incorporating the initial petition's allegations and further alleging Tyland failed to make reasonable efforts and progress during the nine-month period from May 15, 2024, to February 15, 2025. See 750 ILCS 50/1(D)(m)(i)-(ii) (West 2024).

¶ 7      The trial court conducted a fitness hearing on November 6, 2025. DCFS caseworker Caitlin Rauch testified she was assigned to T.H.'s case from January 2023 to October 2025. According to the service plan created in June 2023, Tyland was expected to cooperate with DCFS, comply with visitation requirements, complete parenting classes, take a mental health assessment and a domestic violence assessment, and comply with any recommended treatment based on those assessments. Tyland was also required to complete a sex offender assessment "[d]ue to his past history and his status." The State entered into evidence certified copies of Sangamon County case Nos. 11-CF-127, 16-CF-1021, and 19-CF-493, without objection. The

court took judicial notice that, in those cases, Tyland was convicted for aggravated criminal sexual abuse to a victim under 13, a Class 2 felony (720 ILCS 5/11-1.60(c)(1)(i), (g) (West 2010)), and two counts of failure to register as a sex offender, both Class 3 felonies (730 ILCS 150/3(a), 10(a) (West 2016); 730 ILCS 150/3(a), 10(a) (West 2018)).

¶ 8    Tyland completed a psychosexual evaluation, which diagnosed him with pedophilic disorder, sexual compulsivity disorder, and histrionic personality disorder with narcissistic and turbulent features. The evaluator recommended Tyland receive psychological treatment to address his histrionic personality disorder. However, he did not engage in the recommended treatment. Rauch suggested Tyland obtain counseling from Memorial Behavioral Health, but Tyland reported they would not take his insurance. Rauch told him to contact his insurance provider to determine which local service providers would accept his insurance. To the best of Rauch's knowledge, Tyland did not call his insurance provider or seek out other service providers. After her initial recommendation, Rauch did not identify or recommend alternative service providers that might accept Tyland's insurance. Rauch testified, "If he wanted the psychological treatment[,] he knew to contact his insurance for service providers."

¶ 9    During the case's pendency, Tyland did not attend or complete parenting classes, and he never engaged in domestic violence services. Rauch testified Tyland denied committing aggravated criminal sexual abuse to a victim under 13.

¶ 10    Rauch testified Tyland cooperated with DCFS, and he maintained stable housing and income throughout the case. Tyland attended visits with T.H. "[f]or the most part." Tyland brought necessary items to the visits, and the visits generally went well. However, Tyland never received unsupervised visits with T.H. Throughout the case, Tyland lived with T.H.'s mother, who did not complete the services necessary to facilitate T.H.'s return to their care. As a result,

even if Tyland completed his own services, he would not be able to regain custody of T.H. At no point during the case was T.H. close to returning to Tyland's care.

¶ 11        On cross-examination, Rauch testified Tyland completed a coparenting class before T.H.'s case began, but Rauch informed Tyland that he would need to complete another parenting course. Rauch specified, "We always recommend, even if services were completed prior to DCFS involvement, that they are redone and it's not a co-parenting class that we recommended." Tyland's psychosexual evaluation also indicated he posed a below average risk to reoffend. However, the evaluating doctor "continued to recommend that [Tyland] not be allowed unsupervised around children."

¶ 12        During direct examination by the trial court, Rauch testified Tyland's visits did not progress beyond two hours because he was never close to obtaining custody of T.H., as he refused to complete his recommended services. Parents receive increased visitation when they get closer to the child's return home. The psychosexual evaluation recommended that Tyland only have supervised contact with minors. Tyland did not engage in any counseling during the case. Rauch testified Tyland did not take responsibility or accountability for his convictions during his interactions with her. Tyland complied with his monthly visits, but he did not make other proactive efforts to regain custody of T.H., such as taking parenting classes or engaging in domestic violence counseling or mental health counseling.

¶ 13        During closing arguments, the State argued Tyland had not completed the recommended services. While he maintained stable housing and income, the State asserted he failed to "show[ ] any responsibility in that he has done nothing to make progress towards having his child returned." The State also observed Tyland had three felony convictions, and his conviction in case No. 19-CF-493 was entered within the last five years. Thus, the State argued,

a rebuttable presumption of depravity existed, and Tyland did not rebut that presumption. The State asserted the evidence showed Tyland "ha[d] not been rehabilitated at all because he still delusions himself into believing that he did nothing wrong in sexually abusing a nine-year-old child."

¶ 14        Tyland's counsel argued the evidence rebutted the presumption of depravity, emphasizing the psychosexual evaluation described Tyland as a below average risk to reoffend. Counsel stated Tyland was not involved in the conduct resulting in T.H.'s placement with DCFS and he cooperated with DCFS. Counsel asserted "barriers kept being erected in front of [Tyland]," and he questioned the requirements placed on Tyland. Specifically, counsel challenged DCFS's expectation that Tyland complete parenting classes when "there were no parenting concerns identified." Counsel insisted DCFS did not make sufficient efforts to find a service provider who would accept Tyland's insurance. Counsel argued Tyland showed he was rehabilitated because he was convicted of aggravated criminal sexual abuse to a victim under 13 in 2011, and in the intervening years, there had been no other sex offense allegations brought against him.

¶ 15        The guardian *ad litem* (GAL) argued the State had met its burden. The GAL observed T.H. suffered "substantial abuse" while living with Tyland, and as a result, DCFS recommended certain services. The GAL asserted, "[I]t doesn't seem that any of those services were really attempted and this case has been open for quite some time."

¶ 16        The trial court found the State had proved by clear and convincing evidence that Tyland was an unfit parent because he failed to make reasonable efforts or reasonable progress toward T.H.'s return to his care during the specified nine-month periods. The court observed Tyland was expected, *inter alia*, to cooperate with DCFS, complete parenting classes, obtain a

sex offender assessment and a mental health assessment, and engage in any recommended treatment. The court found it was appropriate to recommend parenting classes because Tyland "was not displaying appropriate protective measures" when T.H. was presenting with bruises, even if Tyland was not the perpetrator of the abuse. The court found Tyland "was not fully forthcoming" during his psychosexual evaluation, as evidenced by his ongoing insistence he did not commit the crimes to which he pleaded guilty, and thus, the court did not believe the assessment was accurate when it deemed Tyland a low risk to reoffend. Additionally, the assessment recommended Tyland engage in mental health services, but he did not do so. The court found Tyland was unreasonable when he failed to contact his insurance provider to identify nearby service providers. The court found it was reasonable for Rauch to recommend DCFS's preferred service provider in the area and then to advise Tyland to contact his insurance when he learned they would not cover treatment with that service provider. The court emphasized Tyland "never made any efforts *** to identify any other providers or engage in any other treatment" during the case's pendency, even after the psychosexual evaluation diagnosed him with three distinct disorders and recommended psychological treatment.

¶ 17   Regarding the State's depravity allegation, the trial court asserted the following:

"[Tyland] continues to deny the extent of the criminal sexual abuse that was pled to in the 2011 case and taking into consideration that he failed on not one but at least two different occasions to register as a sexual offender, the Court can find that [Tyland] is depraved as evidenced by those three felonies and he has not been rehabilitated in that respect as he continues to deny and take responsibility for those actions."

While the court determined it could find Tyland unfit on depravity grounds, it ultimately

concluded, "The Court would find that [Tyland] is unfit by clear and convincing evidence because he has not made reasonable efforts to engage in any treatment or *** and therefore he has not made any reasonable progress in regards to that treatment."

¶ 18     The trial court conducted a best-interests hearing on December 4, 2025, after which it found it was in T.H.'s best interests to terminate Tyland's parental rights.

¶ 19     This appeal followed.

¶ 20                                    II. ANALYSIS

¶ 21     On appeal, Tyland argues the trial court's unfitness finding was against the manifest weight of the evidence because (1) the record does not support the conclusion that he failed to make reasonable efforts and reasonable progress toward T.H.'s return to his care and (2) the exhibits supporting the State's depravity argument were disputed and not judicially noticeable. Tyland does not challenge the court's best-interests finding. We affirm.

¶ 22                                    A. Good Cause

¶ 23     As a preliminary matter, this is an accelerated appeal under Illinois Supreme Court Rule 311(a) (eff. July 1, 2018), and we are required to issue a decision within 150 days after the filing of the notice of appeal unless good cause is shown.. Tyland filed his notice of appeal on December 18, 2025, and our ruling was due to be filed by May 18, 2025. However, we granted Tyland's request for oral argument on appeal in this case, and we heard arguments on May 20, 2025. Accordingly, we find good cause exists to issue our disposition after the 150-day deadline.

¶ 24                                    B. Standard of Review

¶ 25     To terminate an individual's parental rights, the State must first show the parent is unfit by clear and convincing evidence. 705 ILCS 405/2-29(2) (West 2024); *In re J.H.*, 2020 IL

App (4th) 200150, ¶ 67. "The trial court is given broad discretion and great deference in matters involving minors." *In re E.S.*, 324 Ill. App. 3d 661, 667 (2001). We will not reverse an unfitness finding unless it is against the manifest weight of the evidence, as such a determination "involves factual findings and credibility determinations that the trial court is in the best position to make." *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 48. "A decision is against the manifest weight of the evidence when the opposite conclusion is clearly apparent." *Ta. T.*, 2021 IL App (4th) 200658, ¶ 48.

¶ 26                                    C. Unfitness Finding

¶ 27        The Adoption Act provides several grounds on which a trial court may find a parent unfit. See 750 ILCS 50/1(D) (West 2024). Those grounds include a parent's failure to make reasonable progress toward the child's return to their care during any nine-month period following the adjudication of neglect or abuse. 750 ILCS 50/1(D)(m)(ii) (West 2024). "A finding that any one allegation has been proven by clear and convincing evidence is sufficient to sustain a parental unfitness finding on review." *In re J.O.*, 2021 IL App (3d) 210248, ¶ 33.

¶ 28        " '[R]easonable progress' " means "measurable or demonstrable movement toward the goal of the return of the child." *In re L.L.S.*, 218 Ill. App. 3d 444, 460-61 (1991). We have previously described "reasonable progress [a]s an objective standard" measuring whether "the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the court, in the *near future*, will be able to order the child returned to parental custody." (Emphasis in original and internal quotation marks omitted.) *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88. In determining whether a parent has made reasonable progress, we measure "parental compliance with the court's directives, the DCFS service plan, or both." *In re J.A.*, 316 Ill. App. 3d 553, 564 (2000). "At a minimum, reasonable

progress requires measurable or demonstrable movement toward the goal of reunification." *J.A.*, 316 Ill. App. 3d at 565.

¶ 29 The evidence supports the trial court's determination that Tyland failed to make reasonable progress toward T.H.'s return during the specified nine-month periods. The service plan's requirements included parenting classes and any recommended treatment based on his mental health assessment and sex offender assessment. Tyland's psychosexual evaluation diagnoses included histrionic personality disorder with narcissistic and turbulent features, and the evaluation recommended he receive psychological treatment. When Tyland discovered Rauch's suggested service provider did not accept his insurance, and knowing services were required before he could ever hope to have T.H. returned to him, he made no effort to identify other service providers in the area that his insurance would cover. Instead, he blamed Rauch and DCFS for not finding other providers for him. On appeal, he continues to try to shift responsibility away from himself and onto Rauch and DCFS. The court found Rauch acted reasonably when she advised Tyland to contact his insurance to find alternative service providers, and it expressed concern that Tyland failed to take this basic step. We echo the court's concerns. By refusing to contact his insurance provider to ask about alternative service providers, Tyland chose to make no progress at all toward T.H.'s return.

¶ 30 Tyland likewise made no progress toward T.H.'s return when he chose not to engage in or complete parenting classes. On appeal, he contends the service plan's recommendation was superfluous because he completed a parenting class prior to DCFS's involvement in this case. However, Rauch testified Tyland previously completed a coparenting course, which was different from the parenting classes that the service plan recommended. Additionally, when Tyland and T.H. lived together, T.H. exhibited clear signs of physical abuse,

including bruising to his face and arms and swelling to his ears. Tyland's failure to employ appropriate measures to protect his child shows he would benefit from parenting classes. The trial court found it was appropriate to require Tyland to complete more parenting classes, and his failure to do so serves as another example of his lack of progress toward T.H.'s return.

¶ 31 Further, Tyland chose to continue living with T.H.'s mother, despite the fact that she physically abused T.H., which necessitated T.H.'s placement with DCFS. Like Tyland, T.H.'s mother did not complete the services necessary for T.H.'s return to their care, eventually surrendering her parental rights. Based on this, even if Tyland did complete his own services, he could not regain custody of T.H. However, because Tyland refused to engage in or complete any of the recommended services, at no point during the case was T.H. close to returning to Tyland's care. The evidence demonstrates the State met its burden of showing Tyland failed to make reasonable progress toward reunification during the nine-month periods in question. See *F.P.*, 2014 IL App (4th) 140360, ¶ 88; *J.A.*, 316 Ill. App. 3d at 565.

¶ 32 The trial court found the State proved by clear and convincing evidence that Tyland failed to make reasonable progress toward T.H.'s return to his care during the relevant nine-month periods. The opposite conclusion is not clearly evident, and therefore, we cannot find the trial court's holding stands against the manifest weight of the evidence. See *In re A.L.*, 409 Ill. App. 3d 492, 500 (2011). Because we affirm the court's unfitness finding regarding Tyland's failure to make reasonable progress, we need not address any other bases for unfitness.

¶ 33                                   III. CONCLUSION

¶ 34 For the reasons stated, we affirm the trial court's judgment.

¶ 35 Affirmed.